**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> XIRGO TECHNOLOGIES, LLC; XIRGO HOLDINGS, INC. <br><br> Defendant. | Civil Action No. 1:25-cv-01941 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against Defendants Xirgo Technologies, LLC and Xirgo Holdings, Inc. (collectively, "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 7,058,040 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2. | 7,260,153 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 3. | 7,656,845 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 4. | 7,742,388 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 5. | 8,005,053 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |

|   | Patent No. | Reference |
|---|---|---|
| 6. | 7,536,189 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7536189 |
| 7. | 7,599,715 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7599715 |

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Based upon public information, Defendant Xirgo Technologies, LLC is a limited liability company organized under the laws of Delaware and is headquartered at 2100 Golf Road, Suite 290, Rolling Meadows, IL 60008.

5. Based upon public information, Xirgo Technologies, LLC may be served through its registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 190808.

6. Based upon public information, Xirgo Holdings, Inc. is a corporation organized under the laws of Indiana and is headquartered at 2100 Golf Road, Suite 290, Rolling Meadows, IL 60008.

7. Based upon public information, Xirgo Holdings, Inc. may be served through its registered agent at Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 42604.

8. Based upon public information and belief, Xirgo Technologies, LLC and Xirgo Holdings, Inc. are affiliated companies. *See Privacy Notice*, XIRGO (last visited Oct. 30, 2025), https://xirgo.com/privacy-policy/.

9. Based upon public information, Defendants have a place of business at 12110 Sunset Hills Rd, Suite 600, Reston, VA 20190. *See Find Us Worldwide*, XIRGO

https://xirgo.com/contact/locations/ (last visited Oct. 30, 2025).

## JURISDICTION AND VENUE

10.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-9 above as though fully set forth in their entirety.

11.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

12.     Venue is proper against Defendants in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c) because Defendants have maintained an established and regular place of business in this District and have committed acts of patent infringement in this District from that regular and established place of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).

13.     Defendants offers products and services, including through the use of the Accused Products defined below, and conducts business in this District.

14.     Defendants are subject to this Court's specific and general personal jurisdiction under due process because of Defendants' substantial business in this District, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Virginia and this District; (iii) having an interest in, using, or possessing real property and this District; and (iv) having and keeping personal property in Virginia and in this District.

15.     Specifically, Defendants intend to do and do business in, have committed acts of infringement in this District directly, through intermediaries, and offers their products or services, including those accused of infringement here, to customers and potential customers located in this

state, including in this District, and in the United States.

16.     On public information and belief, as discussed above, Defendants own, operate, manage, conduct business, and direct and control the operations and employees of facilities at a location in this district, including, but not limited to, 12110 Sunset Hills Rd, Suite 600, Reston, VA 20190.  *See* ¶ 9, *supra*; *see also* Figure 1, *infra*.



Figure 1, *available at* https://xirgo.com/contact/locations/.

17.     Defendants direct and control all activities of their United States offices, including any affiliate companies that work out of any of Defendants' United States offices.

18.     Defendants offer products and services and conducts business in this District as described in further detail below.

19.     Defendants ship and cause to be shipped into this District infringing products and materials instructing their customers to perform infringing activities and/or to its employees,

exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District

20.    Defendants market, sell, and deliver accused products in this district, and have committed acts of infringement in this District.

## THE ACCUSED PRODUCTS

21.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

22.    Defendans use, cause to be used, provide, supply, or distribute Xirgo's transportation solution which incorporates fleet management platform and tracking solutions, including but not limited to, Xirgo devices, including but not limited to devices that have the following identifiers including, but not limited to, the KP2, KP2 AI camera, KP2-DFC-S, XT3100 Series, AP1, XG3700, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, XG4600, XG4780, XT53, XT88, XT2100, XT2400, XT2500, XT2600, XT4500, XT4600, XT4700, XT4900, XT4971A Series, XT6200, XT6264, XT6300, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM, CRX, CRXS, CP4S, CP4S 4-Channel DVR, Xirgo CP4S-W 4-Channel HD Vehicle Recorder, Xirgo Fleet Management Solution, Xirgo Fleet Management software/website, Xirgo Global Logistics software/website, Xirgo Telematics Devices, Tire Pressure Monitoring System, and in-cab display/monitor (e.g., SV7QLCD-T); other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and

functionality associated with those products and solutions. *See* **Exhibits A-G** (Evidence of Use Charts Regarding Infringement of the Asserted Patents).

23.    On information and belief, the Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and various subsections thereof, including, but not limited to, 802.11ac and 802.11n.

24.    Defendants own, operate, advertise, and/or control at least the website https://xirgo.com/ through which they advertise, sell, offer to sell, promote, provide and/or educate customers about their products, including the Accused Products.

25.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,058,040

26.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

27.    For purposes of this Count I, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo products that have the following identifiers: the KP2, XT3100 Series, XG4600, AP1, the XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT4700, XT6200, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the

foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

28.     The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001.  The '040 patent is entitled "Channel Interference Reduction."

29.     Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

30.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

31.     The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

32.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

33.     Defendants have directly infringed the claims of the '040 patent through the end of its term by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendants have directly infringed, either literally or under the

doctrine of equivalents, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in the claim chart attached hereto as **Exhibits A1 and A2**.[1]

34.    Defendants, using the Accused Products, performed the method of claim 1, which is a method for data transmission over first and second media that overlap in frequency.  The method included computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service. *See* Exs. A1, A2.

35.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,260,153</u>

36.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

37.    For purposes of this Count II, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo devices that have the following identifiers, the

---

[1] For all the claim charts that Fleet Connect has included in this Complaint, Fleet Connect cites evidence from both https://xirgo.com/ and https://www.xirgoglobal.com/; upon information and belief, Fleet Connect believes that products sold on https://www.xirgoglobal.com/ are also sold, manufactured, or imported into the United States by Defendants.

KP2, XT3100 Series, XG4600, AP1; XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600, Xirgo CP4S-W 4-Channel HD Vehicle Recorder; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

38.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003. The '153 patent is entitled "Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels."

39.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

40.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

41.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

42.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Defendants have directly infringed the claims of the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products. For instance, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 28 of the '153 patent, as detailed in the claim chart attached hereto as **Exhibits B1, B2, and B3**.

44.     As another example of infringement, Defendants' Accused Products comprise, as recited in claim 28, transmission apparatuses for evaluating a channel of a MIMO wireless communication system, wherein said communication system comprises at least two communication devices having a plurality of radiating elements for the parallel transmission of data sub-streams, comprising: an SVD performer, configured for performing an SVD of an estimated channel matrix to obtain estimated channel singular values, said singular value decomposition comprising a left-hand unitary weighting matrix, a diagonal matrix of said estimated channel singular values, and a right-hand unitary weighting matrix; and a measure calculator associated with said SVD performer, configured for calculating a respective crosstalk measure for each of said sub-streams from said estimated channel singular values and a channel matrix metric. *See* Exs. B1, B2, and B3.

45.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,656,845

46.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

47.    For purposes of this Count III, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo products that have the following identifiers KP2, XT3100 Series, XG4600, AP1, XT6300, XG3700, XT2500, XT2400, CRXS, CP4S,  XT4700, XT6200, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

48.    The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  The '845 patent is entitled "Channel Interference Reduction."  A Certificate of Correction was issued on November 30, 2010.

49.    Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

50.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

51.     The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

52.     The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

53.     Defendants have directly infringed the claims of the '845 patent through the end of its term by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.  For instance, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 18 of the '845 patent, as detailed in the claim chart attached hereto as **Exhibits C1 and C2**.

54.     As another example of infringement, the Accused Products used by Defendants include the apparatuses of claim 18, comprising: a means for allocating at least a first data channel of a plurality of data channels to be shared between a first medium and a second medium, to the first medium for data transmission via a wireless device, and for allocating at least a second data channel of the plurality of data channels to the second medium for data transmission via the wireless device; and a means for dynamically adjusting a number of the data channels assigned to one of the first and second media during the data transmission to remain within limits of a desired

level of service. *See* Exs. C1, C2.

55.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

56.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

57.     For purposes of this Count IV, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo products that have the following identifiers: KP2, XT3100 Series, XG4600, AP1, Xirgo CP4S-W 4-Channel HD Vehicle Recorder, and XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

58.     The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. The '388 patent is entitled "Packet Generation Systems and Methods."

59.     Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

60.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

61.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

62.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.     Defendants have directly infringed and continue to directly infringe the claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 28 of the '388 patent, as detailed in the claim chart attached hereto as **Exhibits D1, D2, and D3**.

64.     As an example of infringement, Defendants' Accused Products include the apparatuses of claim 28 comprising: a PHY unit configured to generate a first packet comprising a preamble portion and a data portion, wherein the preamble portion of the first packet comprises

a first training symbol and a second training symbol wherein the second training symbol comprises a plurality of modulated subcarriers, wherein the first training symbol comprises a plurality of modulated subcarriers, and wherein a quantity of the modulated subcarriers of the second training symbol is greater than a quantity of the modulated subcarriers of the first training symbol; and an antenna configured to transmit the first packet. *See* Exs. D1, D2, and D3.

65.    Defendants have indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 28.  Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants have been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendants' inducement is ongoing.

66.    Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '388 patent.  Defendants have contributed and continue to contribute to the direct infringement of the '388 patent by their customers, personnel, and

contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 28.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

67.     Defendants had knowledge of its infringement of the '388 patent at least as of the date when they were notified of the filing of this action.

68.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

69.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

70.     Defendants' infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

71.     Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of Defendants' infringement of the '388 patent.  Defendants' actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The

balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,005,053

73.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

74.    For purposes of this Count V, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo products that have the following identifiers: the KP2, XT3100 Series, XG4600, AP1, XT6300, XT2500, XT4700, XT6200, XT4900, XT4700, XT4500, XT6264; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

75.    The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.  The '053 patent is entitled "Channel Interference Reduction."

76.    Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

77.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

78.    The claims of the '053 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

79. The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80. Defendants have directly infringed the claims of the '053 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products. For instance, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent, as detailed in the claim chart attached hereto as **Exhibit E**.

81. As just one example of infringement, Defendants' Accused Products include the apparatus of claim 1 comprising: a first wireless transceiver configured to communicate data according to a first wireless protocol; a second wireless transceiver configured to communicate data according to a second wireless protocol that is different from the first wireless protocol; and a controller configured to select one of the first and second wireless transceivers to communicate data of both the first and second wireless protocols, wherein the apparatus is configured to encode data of the wireless protocol for the unselected transceiver into data of the wireless protocol for the selected transceiver. *See* Ex. E.

82. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,536,189

83.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

84.    For purposes of this Count VI, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo products that have the following identifiers: the Xirgo Fleet Management Solution, Xirgo Fleet Management software/website, Xirgo Global Logistics software/website, Xirgo Telematics Devices including the KP2 AI camera, XT88, CP4S 4-Channel DVR, CRX, KP2-DFC-S, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM, XT53, XT3100, XG3700, XT2400, XT2500, XT6300, and in-cab display/monitor SV7QLCD-T; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

85.    The USPTO duly issued U.S. Patent No. 7,536,189 (hereinafter, the "'189 patent") on May 19, 2009 after full and fair examination of Application No. 12/018,588 which was filed on January 23, 2008.  *See* '189 patent at 1.  The '189 patent is entitled "System and Method for Sending Broadcasts in a Social Network."

86.    Fleet Connect owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and enforce the '189 patent against infringers and to collect damages for all relevant times.

87.    The claims of the '189 patent are not directed to an abstract idea and are not limited

to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

88.    The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.    Upon information and belief, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '189 patent, as detailed in the claim chart attached hereto as **Exhibit F**.

90.    As just one example of infringement, Defendants, using the Accused Products, performed the method of claim 1, which is a  method for a system administrator to broadcast an advisory communication to at least one remote unit, the method comprising: accessing a website by a system administrator to send an advisory communication, the website comprising an audio-visual interface for inputting the advisory communication; filtering a plurality of remote units by the system administrator operating the website, the filtering being based upon at least one information field to determine from the plurality of remote units at least one of a first remote unit and a second remote unit to receive a  broadcast of the advisory communication; assembling at least one packet of the advisory communication, the at least one packet comprising at least one of: a first packet comprising a data message for the first remote unit, and a second packet comprising a voice message for the second remote unit;  forwarding the at least one packet to a router for transmission;  transmitting the at least one packet to alert at least one of the first remote

unit and the second remote unit of the advisory communication; and storing, by the website, a log associated with the advisory communication. *See* Ex. F.

91.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '189 patent.

92.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: <u>INFRINGEMENT OF U.S. PATENT NO. 7,599,715</u>

93.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-25 above as though fully set forth in their entirety.

94.    For purposes of this Count VII, the "Accused Products" include Defendants' computing devices, including, but not limited to, the Xirgo Fleet Management Solution, Xirgo Fleet Management software/website, Xirgo Global Logistics software/website, Xirgo Asset Monitoring & Control, Xirgo Telematics Devices including the XT2100, XG3700, XT2500, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM, Tire Pressure Monitoring System, and in-cab display/monitor SV7QLCD-T; other substantially similar products and services offered in the past or the future; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

95.    The USPTO duly issued U.S. Patent No. 7,599,715 (hereinafter, the "'715 patent") on October 6, 2009 after full and fair examination of Application No. 12/389,245 which was filed on

February 19, 2009.  *See* '715 patent at 1.  The '715 patent is entitled "System and Method for Matching Wireless Devices."

96.     Fleet Connect owns all substantial rights, interest, and title in and to the '715 patent, including the sole and exclusive right to prosecute this action and enforce the '715 patent against infringers and to collect damages for all relevant times.

97.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '715 patent.

98.     The claims of the '715 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

99.     The written description of the '715 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.     Based upon information and belief, Fleet Connect is informed and believes that Defendants have directly infringed one or more claims of the '715 patent by making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

101.     Upon information and belief, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 29 of the '715 patent, as detailed in the claim chart attached hereto as **Exhibit G**.

102.    As just one example of infringement, Defendants performed the method of claim 29, which is a method of tracking vehicle maintenance information by a wireless communication system, comprising: receiving a signal transmitted by a vehicle comprising a mobile unit, the signal comprising a vehicle identifier and a status of the vehicle; storing the signal in a first communication log, the first communication log including the vehicle identifier, a transmission time, a transmission date, and the status; determining maintenance information associated with the vehicle, the determining comprises parsing the signal to determine the vehicle identifier and the status; constructing a communication comprising at least one communication packet, the at least one communication packet comprising the maintenance information, an address, and an identification of the vehicle; forwarding the at least one communication packet to a router; transmitting the at least one communication packet over the Internet by the router via the address; and  storing the communication through the Internet in a second communication log. *See* Ex. G.

103.    Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

104.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

105.    Fleet Connect requests that the Court find in its favor and against Defendants, and that the Court grant Fleet Connect the following relief:

    a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in

concert therewith;

b.  A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.  Judgment that Defendants account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendants' infringements of the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>November 3, 2025</u>

Respectfully submitted,

By:<u>*/s/ William R. Poynter*</u>

William R. Poynter (VSB No. 48672)
Caitlin A. Eberhardt (VSB No. 94182)
**KALEO LEGAL**
4456 Corporation Lane, Suite 135
Virginia Beach, Virginia 23462
Telephone: (757) 238-6383
Facsimile: (757) 304-6175
wpoynter@kaleolegal.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff* FLEET CONNECT SOLUTIONS LLC**

* *Pro hac vice* admission to be filed

---

**COMPLAINT FOR PATENT INFRINGEMENT**